**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 16-cr-00571 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| NIKOLE YVETTE JOHNSON | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

During a visit with a federal inmate at the Metropolitan Correctional Center ("MCC"),
Defendant Nikole Yvette Johnson was caught giving the inmate a balloon later found to contain
cocaine and tobacco. She was charged with providing a prohibited object to a federal prisoner in
violation of 18 U.S.C. § 1791(a)(1). Johnson has admitted to providing the balloon to the inmate
but claims she believed that the balloon contained only tobacco. Before the Court is the question
of whether Johnson's admitted violation of § 1791(a)(1) should be punished as a felony offense
under §1791(b)(1), due to the cocaine that she actually provided to the inmate, or as a
misdemeanor offense under § 1791(b)(5), because she only had knowledge that the balloon
contained tobacco. On November 30, 2018, the Court held a bench trial on this limited issue. For
the following reasons, the Court finds Johnson guilty of a felony-level violation of § 1791(a)(1).

## BACKGROUND

This matter has come before the Court in a somewhat unusual procedural posture, where
the parties have stipulated to most of the relevant facts and essentially ask the Court to decide
what crime the defendant committed. The bench trial in this matter consisted mostly of oral
argument concerning the application of 18 U.S.C. § 1791 to the stipulated evidence, which
included a video of Johnson's actions in the MCC visitors' area, a photograph of the contents of

the balloon Johnson smuggled into the MCC, and the following factual stipulations (Stipulated Facts, Dkt. No. 64).

Johnson visited an inmate, Jon Giles, at the Metropolitan Correctional Center ("MCC") on October 28, 2015. (*Id.* ¶¶ 1, 5.) Upon entering the MCC, Johnson filled out a "Notification to Visitor" form that listed all prohibited items that visitors were not permitted to bring into the facility. (*Id.* ¶ 3.) Included on the list were tobacco products and narcotics. (*Id.*) Johnson stated on the form that she did not possess those items or any other prohibited objects. (*Id.*)

During her visit with Giles, Johnson briefly excused herself to go to the restroom. (*Id.* ¶ 4.) When she returned, Johnson removed a balloon she illicitly brought into the prison and placed it into a bag of chips, which she then passed to Giles. (*Id.*) But Johnson was unable to conceal her actions from prison officials, who quickly intervened and attempted to confiscate the balloon. (*Id.*) In response, Giles ripped open the balloon and unsuccessfully tried to put its contents into his mouth and swallow it. (*Id.*)

Johnson later admitted that she knew the balloon contained a prohibited object and that she had violated prison rules by giving it to Giles. (*Id.* ¶ 5.) While Johnson stated that she believed the balloon contained only tobacco, a search of the balloon revealed not only tobacco but also .15 grams of cocaine and a thumb drive containing pornography. (*Id.* ¶¶ 5–6.)

## DISCUSSION

### I.      Findings of Fact

As an initial matter, based on the evidence presented, the Court finds that the Government has proved beyond a reasonable doubt that Johnson knowingly provided an inmate of a prison with a prohibited object in violation of 18 U.S.C. § 1791(a)(1). Furthermore, the prohibited object provided by Johnson included both tobacco and cocaine, as well as pornography.

These findings are supported by the parties' stipulated facts, including that: the MCC is a prison within the meaning of 18 U.S.C. § 1791(d)(4); Johnson admits that she knowingly provided Giles with a prohibited object while he was in custody at the MCC in violation of MCC rules; Johnson in fact provided Giles with a balloon containing cocaine, tobacco, and a thumb drive containing pornography, all of which are prohibited objects within the MCC; and Johnson admits that she believed the balloon to contain tobacco. (*See e.g.*, Stipulated Facts ¶¶ 1, 2, 3, 5, 6, 8.) This conclusion is further supported by the Court's viewing of the video showing Johnson's conduct in surreptitiously passing the balloon containing the prohibited objects to Giles in the MCC visitors' area.

During the bench trial, the Government suggested (albeit somewhat as an afterthought) that the Court could decide that Johnson should be punished for a felony-level offense pursuant to 18 U.S.C. § 1791(b)(1) based on a factual finding that she actually did know that the balloon contained cocaine as well as tobacco. However, the only evidence presented on that point at trial was the fact that the balloon in fact contained cocaine (per the parties' stipulation), the video of Johnson's interaction with Giles in the visitors' area, and the photograph of the contents of the balloon taken after the items were confiscated by MCC guards. The Court finds this evidence insufficient to establish beyond a reasonable doubt that Johnson knew the balloon contained cocaine as well as tobacco. Accordingly, the Court finds only that Johnson knew the balloon contained tobacco.

## II.      Conclusions of Law

The Court next turns to the heart of the parties' dispute: whether Johnson should be punished for her violation of 18 U.S.C. § 1791(a)(1) based on the prohibited object that she

provided to an inmate being tobacco only (as she believed it to be) or tobacco as well as cocaine (as it actually was).

Under § 1791(a)(1), it is unlawful for a person to "provide[] to an inmate of a prison a prohibited object." An individual who violates that provision is punished pursuant to 18 U.S.C. § 1791(b)(1), which provides different maximum terms of imprisonment based on the particular object the individual brought into the prison. The sole issue before the Court is whether Johnson should be punished for bringing a narcotic drug—namely, cocaine—into the MCC even if she believed there was only tobacco in the balloon. Specifically, Johnson claims that she cannot be subject to the penalty provision applicable for smuggling cocaine into the MCC because she did not knowingly provide cocaine to Giles.

While 18 U.S.C. § 1791(a)(1) contains no express *mens rea* requirement, it is well-settled that such a requirement is implied. *See United States v. Fox*, 845 F.2d 152, 156 (7th Cir. 1988) (finding that an earlier version of 18 U.S.C. § 1791(a) contained an implied "knowing or intentional possession" *mens rea* element); *see also United States v. Holmes*, 607 F.3d 332, 335–36 (3d Cir. 2010) (finding implied *mens rea* requirement in the current version of 18 U.S.C. § 1791(a)(2)). Thus, there is no question that an individual must intentionally or knowingly provide a prohibited object in order to be found guilty of violating § 1791(a)(1). However, the parties disagree as to whether the *mens rea* requirement extends to knowledge of the particular category of prohibited object provided—and this appears to be a case of first impression.

To determine whether Johnson must have knowingly provided cocaine to be punished for providing it to a federal prisoner, the Court first considers the text and structure of the statute. Section 1791 is structured as first defining the crime in subsection (a). Subsection (a) then provides that a violator "shall be punished as provided in subsection (b)." 18 U.S.C. § 1791(a).

And each punishment provision in subsection (b) assigns a maximum prison term based on the category of prohibited object at issue, incorporating by reference one or more of the categories of objects that together make up the definition of the term "prohibited object" as set out in subsection (d)(1). As relevant for present purposes, an individual who has brought a narcotic drug such as cocaine[1] into a prison is subject to a maximum twenty-year term of imprisonment, *id.* § 1791(b)(1), (d)(1)(C), (d)(3), whereas an individual who brings only tobacco, which is regarded as "any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual," is subject to a term of imprisonment not greater than six months, 18 U.S.C. §§ 1791(b)(5), (d)(1)(G). Although the punishment provisions do not provide for a mandatory minimum, the difference between the two punishment provisions is the difference between a felony conviction and a misdemeanor conviction. *See* 18 U.S.C. § 3559(a) (classifying an offense with a maximum term of imprisonment of less than twenty-five years but ten or more years as a Class C felony and classifying an offense with a maximum term of imprisonment of six months or less but more than thirty days as a Class B misdemeanor).

The implied *mens rea* requirement applies to each element of the offense, and those elements are set out in subsection (a). *See Torres v. Lynch*, 136 S. Ct. 1619, 1630 (2016) ("In

---

[1] The indictment charges Johnson with providing Giles "a quantity of mixtures and substance containing cocaine," which was a prohibited object as defined in 18 U.S.C. § 1791(d)(1)(A). (Dkt. Nos. 1, 2.) However, § 1791(d)(1)(A) applies only to a schedule I or II controlled substance other than a controlled substance referred to in § 1791(d)(1)(C). That subsection includes narcotic drugs, which is defined by reference to 21 U.S.C. § 802. And that statute includes cocaine within the definition of narcotic drug. 21 U.S.C. § 802(17). According to Johnson, the indictment must cite § 1791(d)(1)(C) for the Government to obtain a conviction based on evidence showing that Johnson provided an inmate with cocaine, and it does not. This argument is unavailing, however, as the facts set forth in the indictment were sufficient to apprise Johnson of the crime that the Government intended to prove and are consistent with the factual stipulations for the bench trial. The indictment's error in citing the incorrect definition for the type of prohibited object at issue does not undermine the Government's ability to convict on the evidence presented. *See United States v. Shields*, 789 F.3d 733, 742 (7th Cir. 2015) ("[A] miscitation . . . is harmless error and cannot be grounds for dismissing the indictment or reversing the conviction unless the defendant is misled by the erroneous reference and prejudiced thereby.").

general, courts interpret criminal statutes to require that a defendant possess a *mens rea*, or guilty mind, as to every element of an offense."). In stating the offense, the statute makes it unlawful to knowingly or intentionally provide a prohibited object to a prison inmate. Because "prohibited object" is defined in a separate subsection from the elements of the offense conduct, the Court reads the *mens rea* requirement in subsection (a) as applying to a prohibited object generally; the precise category of object is not an element of the offense. In other words, the only required knowledge is the individual's knowledge that she possesses a prohibited object. There is no basis for extending the *mens rea* requirement any further, as "[w]hen interpreting federal criminal statutes that are silent on the required mental state," courts may "read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." *Elonis v. United States*, 135 S. Ct. 2001, 2010 (2015). Knowingly providing a prison inmate any prohibited object is undoubtedly wrongful conduct and declining to apply the mental state requirement to the exact category of object provided does not raise the risk of criminalizing otherwise innocent conduct. *See id.*

The offense is thus complete as soon as the individual has knowingly provided ***any*** prohibited object to a prison inmate and the individual is subject to punishment as provided in subsection (b). Only in subsection (b) does the specific category of prohibited object come into play, and those punishment provisions contain no further mental state element. Once an individual has knowingly provided a prohibited object to a prison inmate, her maximum punishment will be based not on what she thought the prohibited object was but instead on what the prohibited object turned out to be. Meaning, once Johnson knowingly brought tobacco into the MCC, she bore the risk of unwittingly bringing in the cocaine and being punished accordingly.

The Court's reading of 18 U.S.C. § 1791 finds support in a similarly-structured statute banning narcotics distribution, 21 U.S.C. § 841. In subsection (a), the latter statute makes it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance. *Id.* § 841(a). Then, subsection (b) of that statute prescribes varying penalties depending on the type of controlled substance involved. The Seventh Circuit has found that § 841(a) defines the crime and § 841(b) contains the considerations that determine the maximum and minimum sentences. Therefore, it has held that § 841(a) only requires "that a defendant knowingly possess a controlled substance. Drug type is not specified and therefore is not an element of § 841(a)." *United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002). That logic applies equally to 18 U.S.C. § 1791.

Johnson points to an Eleventh Circuit case, *United States v. Allen*, 190 F.3d 1208 (11th Cir. 1999), as demonstrating that § 1791(a) requires knowledge as to the category of object possessed. There, a prisoner was charged for possessing sewing needles.[2] The issue before the *Allen* court was whether the needles fell under the catchall penalty provision applicable to "any other object that threatens the order, discipline, or security of a prison," for which the prisoner would face a maximum six-month sentence, 18 U.S.C. § 1791(b)(5), (d)(1)(G), or whether possession of the needles should be punished based on "an object that is . . . ***intended*** to be used as a weapon," which would subject the prisoner to a five-year maximum sentence *id.* § 1791(b)(3), (d)(1)(B) (emphasis added). By its express terms, whether an object is intended to be used as a weapon requires a determination of intent. The *Allen* court simply held that the determination regarding the intended use of the object must found by a jury subject to the beyond-

---

[2] The defendant in *Allen* was charged under 18 U.S.C. § 1791(a)(2), which makes it unlawful for a prison inmate to make, possess, or obtain a prohibited object.

a-reasonable-doubt standard, rather than by a judge applying a preponderance-of-the-evidence standard at sentencing. *Allen*, 190 F.3d at 1210–11.

The *Allen* court's holding may be better understood in light of the later-decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000). There, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The lowest maximum penalty under § 1791(b) is six months pursuant to § 1791(b)(5). Thus, under *Apprendi*, any fact that increases that maximum penalty must be submitted to a jury. While decided earlier, the same reasoning underlies the decision in *Allen*. There, the Eleventh Circuit justified its holding, in part, based on the fact that the difference between whether the object was intended to be used as a weapon or simply threatened prison order and discipline was the difference between a maximum sentence resulting in a felony conviction and a maximum sentencing resulting in a misdemeanor conviction. It noted that "[t]o construe the type of prohibited object as a sentencing factor removes the possibility that a jury could convict a defendant of . . . a misdemeanor offense subjecting the defendant to no more than six months of imprisonment." *Allen*, 190 F.3d at 1211.

Once again, cases interpreting 21 U.S.C. § 841 are instructive. In *United States v. Carrera*, 259 F.3d 818 (7th Cir. 2001), the Seventh Circuit addressed the impact of *Apprendi* on the rule allowing a defendant to be convicted of the manufacture or distribution of drugs without knowing the exact type and quantity of the drug involved. The Seventh Circuit found that *Apprendi* did not change the rule, as "the defendant's knowledge of the quantity and type of controlled substance is not a fact that may be used to increase the penalty beyond the statutory maximum—only the actual quantity and type of controlled substance may increase the statutory maximum." *Carrera*,

259 F.3d at 830; *see also United States v. Gamez-Gonzalez*, 319 F.3d 695, 700 (7th Cir. 2003) ("**Knowledge** of drug type and quantity is **not**, in the words of *Apprendi*, a "fact that increases the subsection (b) penalty. The penalty is, instead, based solely on the type and quantity **involved** in the unlawful act. . . . § 841 employs a strict liability punishment scheme." (emphasis in original, internal quotation marks and citation omitted)). Thus, *Allen*, understood in light of *Apprendi*, stands only for the proposition that, in a jury trial, the determination of the category of prohibited object is an issue that must be submitted to a jury. It did not hold that knowledge of the type of prohibited object is an element of the offense. While intent was relevant to the determination in *Allen*, this was only because the particular category of prohibited object at issue incorporated intent in its definition.

By contrast, the determination as to whether a prohibited object is cocaine is an objective inquiry, and in any case, the parties here stipulated to its presence in the balloon. And of course, because this matter is being decided by a bench trial, there are no issues to submit to a jury. Thus, to prove her guilt, the Government needed only to show that Johnson knew she possessed a prohibited object. Only after the offense conduct is established does the type of object come into play. At that point, the statute employs a strict liability punishment scheme. *Cf. Gamez-Gonzalez*, 319 F.3d at 700 ("§ 841 employs a strict liability punishment scheme. . . . [F]or § 841, the knowledge required for the act to be unlawful does **not** apply to the penalty." (internal quotation marks and citation omitted)).

While it may seem unfair to read the statute to increase Johnson's maximum penalty on the basis of a prohibited item she did not know she possessed, the Court is mindful of "the unique environment in which [the statute] is designed to operate." *United States v. Chatman*, 538 F.2d 567, 569 (4th Cir. 1976). "A federal penal institution has peculiar needs, and statutes designed to

regulate articles being introduced into such institutions must be scrutinized in light of those needs." *Id.* One of the most important of those needs is "[p]rison safety and security." *Holmes*, 607 F.3d at 336. The paramount importance of prison safety and security bolsters the Court's interpretation of the statute. Indeed, Congress recognized that any number of outside items—legal or illegal in and of themselves—present a great risk to the order, discipline, and security necessary at a federal prison. An individual who knowingly attempts to provide a federal inmate with any prohibited item presents a serious threat to those interests. It is not unreasonable then that Congress would hold a person who knowingly brings one prohibited item into a prison liable for any other prohibited item she brought in as well, regardless of her knowledge as to the other item or items. For instance, imagine that a prison visitor brings an opaque balloon into the facility to pass off to an inmate. Prior to her visit, the visitor is given the pre-packaged balloon by the inmate's friend, who tells her it contains only tobacco. Unbeknownst to the visitor, the friend actually filled the balloon with cocaine. Yet the visitor brings the balloon filled with what she believes to be tobacco to the inmate even though she knows that tobacco is a prohibited item. After all, it is just tobacco; if she gets caught what is the worst that can happen? Congress may well have thought it necessary to discourage such situations by placing the risk of mistaken knowledge as to the contents of the balloon with the person who brought the prohibited balloon into the facility.

In sum, once Johnson knowingly provided Giles with tobacco—an item she knew to be a prohibited object—her offense was complete and she was subject to appropriate punishment. As provided by the governing statute, the appropriate punishment was based on what the prohibited object actually was, cocaine (in addition to tobacco), not what she believed it to be. Therefore, Johnson committed a felony-level offense under 18 U.S.C. §§ 1791(a)(1) and (b)(2).

## CONCLUSION

For the foregoing reasons, the Court finds Johnson guilty of violating 18 U.S.C. § 1791(a)(1). Further, Johnson is subject to punishment for that violation with a term of imprisonment of not more than twenty years, pursuant to 18 U.S.C. § 1791(b)(1).

ENTERED:

Dated: April 8, 2019

Andrea R. Wood
United States District Judge